OPINION OF THE COURT
William H. Keniry, J.
Petitioner, until his termination in December 1987, was a parole officer of the State of New York working in New York City. On December 16, 1987, petitioner was convicted of three felony counts of sodomy in the second degree, three misdemeanor counts of sexual abuse in the second degree, and three *165 misdemeanor counts of endangering the welfare of a minor following a jury trial held in Queens County Supreme Court. Petitioner immediately notified his supervisor of his conviction. By letter dated December 18, 1987, the petitioner was suspended without pay by the State Division of Parole. Thereafter by letter dated December 22, 1987, petitioner was advised that his employment was terminated effective December 18, 1987 in accordance with section 30 (1) (e) of the Public Officers Law.
Petitioner, who was first hired as a probationary parole officer on December 4, 1980, obtained permanent/tenured status on December 4, 1981. Prior to his termination, he was never formally or informally disciplined. Petitioner was sentenced on February 18, 1988 to serve five years’ probation and is presently appealing his conviction. At all relevant times, petitioner was a member of the Professional, Scientific and Technical Services Collective Bargaining Unit of State employees which is represented by the Public Employees Federation AFL-CIO (hereinafter PEF). On December 30, 1987, PEF filed a contract grievance and a demand for arbitration on petitioner’s behalf contending that the respondents violated the PEF/State collective bargaining agreement by terminating petitioner without complying with the agreement’s disciplinary procedures. Respondents thereafter refused to participate in the arbitration process.
This CPLR article 78 proceeding was then commenced against Ramon J. Rodriguez as Chairman of the New York State Division of Parole and the New York State Division of Parole. The petition seeks a judgment (1) declaring that respondents’ action in terminating petitioner pursuant to Public Officers Law § 30 (1) (e) was arbitrary, capricious and an error of law; (2) declaring that petitioner was a public employee and not a public officer and therefore was not subject to section 30 (1) (e) of the Public Officers Law and (3) ordering petitioner’s reinstatement with back pay and benefits retroactive to the date of his termination. The respondents move for an order pursuant to CPLR 7804 dismissing the petition on the ground that it fails to set forth facts sufficient to state a cause of action. The motion is based upon the argument that petitioner was a public officer and, as such, his position became vacant upon his conviction of a felony by operation of section 30 (1) (e) of the Public Officers Law and that respondents were therefore not obligated to follow the *166 disciplinary procedures set forth in article 33 of the PEF/ State contract.
The controlling issue presented is whether petitioner was a public employee or a public officer. If found to be a public employee, petitioner was entitled to the rights afforded him under article 33 of the governing PEF/State collective bargaining agreement. Since the respondents admittedly did not .follow the agreement’s disciplinary procedures in terminating petitioner, a finding that petitioner was a public employee would necessitate a decision declaring that he was improperly terminated. On the other hand, if petitioner was a public officer subject to the mandate of Public Officers Law § 30, then, upon his conviction of a felony, his position became vacant by operation of law and the procedure followed by respondents was proper.
Since the public employee/public officer determination will be dispositive of the proceeding, the court, in compliance with CPLR 3211 (c), notified the parties that it intended to treat the dismissal motion as a motion for summary judgment and invited the parties to submit any additional evidence they deemed appropriate. No additional evidence was submitted and the court will now consider the merits of the proceeding.
Public Officers Law § 30 provides, in pertinent part, that:
"1. Every office shall be vacant upon the happening of one of the following events before the expiration of the term thereof * * *
"(e) His conviction of a felony, or a crime involving a violation of his oath of office”.
In order for the statute to apply to petitioner, an employee of the State Division of Parole, he would have to be considered a "state officer”. The term "state officer” is defined by section 2 of the Public Officers Law to include "every officer, appointed by one or more state officers, or by the legislature, and authorized to exercise his official functions throughout the entire state”.
Section 30 of the Public Officers Law was enacted so that the public has the "right to rest assured that its officers are individuals of moral integrity in whom they may, without second thought, place their confidence and trust” (Matter of Toro v Malcolm, 44 NY2d 146, 152, cert denied 439 US 837). The statute has been invoked to strip both police officers (Matter of Briggins v McGuire, 67 NY2d 965; Matter of Toro v Malcolm, supra; Lemieux v City of Niagara Falls, 138 AD2d *167 945; Matter of Hodgson v McGuire, 75 AD2d 763) and correction officers (Matter of Graham v Coughlin, 135 AD2d 1014) from their positions following criminal convictions.
Respondents argue that a parole officer as a participant in the State’s criminal justice system should be treated like police officers and correction officers since a parole officer’s position entails many of the same powers and obligations. First and foremost, respondents contend that parole officers are public officers by virtue of the fact that they are statutorily classified as peace officers and possess all of the powers attendant to that status.
Petitioner on thé other hand argues that his job was not one in which he exercised sovereign power but was rather one classified and defined by the specifications and standards of the State Department of Civil Service. Petitioner contends that he was a low-level public employee and played a small part in the State’s criminal justice system. Petitioner distinguishes the precedents cited by respondents by pointing out that in all such cases, the dismissed employee was presumed to be a public officer and that the status issue was not questioned or determined (see, Matter of Graham v Coughlin, 135 AD2d 1014, supra; Dempsey v New York Cent. & Hudson Riv. R. R. Co., 146 NY 290).
Since the question of a parole officer’s status is at the heart of this proceeding, the court will analyze the distinctions between public officers and public employees and decide into what category the petitioner falls. The distinction between a public officer and a public employee "is not always an easy matter to determine” (Matter of Mylod v Graves, 274 NY 381, 387). The public officer has been described as "an independent officer whose position is created, and whose powers and duties are prescribed, by statute and who exercises a high degree of initiative and independent judgment” (Matter of O'Day v Yeager, 308 NY 580, 586). The creation and filing of the position must be mandatory (Matter of Lake v Binghamton Hous. Auth., 130 AD2d 913).
In this case, section 259 of the Executive Law authorizes the creation of the State Division of Parole and provides that the Chairman of the State Board of Parole "shall appoint and shall have the power to remove, in accordance with the provisions of the civil service law, all officers and employees of the division” (§ 259 [1]). Section 259-f of the Executive Law establishes the position of parole officer and specifies certain *168 basic qualifications that parole officers must possess. A parole officer’s basic function is to supervise inmates released on parole or on conditional release. A parole officer is also a peace officer (CPL 2.10 [23]) and possesses, among others, the powers to make warrantless arrests, to use physical force and deadly physical force in making an arrest and to carry out warrantless searches (CPL 2.20). Petitioner’s appointment as a parole officer was based upon his “character, ability and training with an emphasis on capacity and ability to provide a balanced approach to influencing human behavior and to use judgment in the enforcement of the rules and regulations of parole and conditional release. Parole officers shall be persons likely to exercise a strong and helpful influence upon persons placed under their supervision while retaining the goal of protecting society” (Executive Law § 259-f [2]).
The parole officer is, by all accounts, an important part of New York’s criminal justice system and serves as the contact person during a convict’s transition from prison to the community-at-large. As such, he is, in this court’s opinion, the equivalent of a police officer or correction officer and must therefore exhibit the same high standards of conduct in order to achieve the respect of his parolees and the public. The parole officer’s position is statutorily created and his powers and duties are statutorily prescribed. A parole officer exercises a high degree of initiative and -independent judgment (see, Eiseman v State of New York, 109 AD2d 46, 57-58, revd on other grounds 70 NY2d 175). This court cannot accept the distinctions raised by the petitioner to avoid the harsh impact of section 30 (1) (e) of the Public Officers Law, a statute which the Court of Appeals has instructed must be applied literally to those who violate the public’s confidence and trust (Matter of Briggins v McGuire, 67 NY2d 965, 970 [dissenting opn of Hancock, Jr., J.], supra). The court holds that for purposes of Public Officers Law §30 a parole officer is a public officer. Thus, upon petitioner’s conviction of three felony counts of sodomy, petitioner’s position as parolé officer became vacant as a matter of law. Petitioner’s termination was automatic and respondents’ actions to effectuate the termination were not arbitrary, capricious or an error of law.
Respondents are granted summary judgment dismissing the petition, without costs.